

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 26, 2024**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 24-10026** |
| **JM4 TACTICAL LLC,** | § | |
| | § | **Chapter 11 (Subchapter V)** |
| Debtor. | § | |

### FINAL ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL OF SECURED LENDERs, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, AND (III) MODIFYING THE AUTOMATIC STAY TO ALLOW FOR THE RELIEF REQUESTED HEREIN

CAME ON for consideration the *Motion for an Order (i) Authorizing the Debtor to Use Cash Collateral of Existing Secured Lenders, (ii) Granting Adequate Protection for the Use Thereof, (iii) Modifying the Automatic Stay and (iv) Scheduling a Final Hearing* (the "Motion")[1] of the above-captioned debtor and debtor-in-possession (the "Debtor") and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

§ 1334; consideration of the Motion and the relief requested therein being a core proceeding in

accordance with 28 U.S.C. § 157(b)(2); venue being proper in this District pursuant to 28 U.S.C.

§ 1408; and due and proper notice of the Motion being adequate and appropriate under the

particular circumstances; an initial hearing having been held to consider the relief requested in the

Motion on February 23, 2024, at 10:00 a.m. (the "Interim Hearing"); a final hearing having been

held to consider the relief requested in the Motion on March 26, 2024, at 1:30 p.m. (the "Final

Hearing"); upon, the record of the Interim Hearing and the Final Hearing; the Court having found

and determined that the relief sought in the Motion is in the best interests of the Debtor's estate,

its creditors and other parties in interest; that the Debtor have shown good, sufficient, and sound

business purpose and justification for the relief requested in the Motion; the U.S. Small Business

Administration (the "SBA") and Idea Financial, Inc. ("Idea," and collectively with the SBA, the

"Secured Lenders") having received notice of the Motion and this order (the "Final Order"); it

appearing from the record that no responses were filed by the Secured Lenders in connection with

the relief sought in the Motion; and after due deliberation and sufficient cause appearing; therefore,

the Court hereby finds:

A.      The Debtor filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of

the United States Code (the "Bankruptcy Code") on February 16, 2024 (the "Petition Date") with

the United States Bankruptcy Court for the Northern District of Texas, Abilene Division (the

"Court").  The Debtor elected to proceed under subchapter V of chapter 11 of the Bankruptcy

Code.

B.      Brad W. Odell has been appointed as the subchapter V trustee (the "Subchapter V

Trustee").

C.      The Debtor continues to manage and operate its business and assets as a debtor and

debtor in possession pursuant to Bankruptcy Code §§ 1184.

D.      Founded in 2016, the Debtor is a family owned and operated, gun holster

manufacturing company.  Specifically, the Debtor manufactures magnetic retention conceal carry

gun holsters that provide unmatched comfort, versatility, and quality to its users.  The Debtor sells

its magnetic retention conceal carry gun holsters to customers across the United States.

E.      The Debtor requires the use of the Cash Collateral in order to continue the Debtor's

ordinary course business operations and to maintain the value of the bankruptcy estates. The

Debtor is permitted to use Cash Collateral, on a final basis, on the terms and conditions provided

for herein.  The Debtor shall not use Cash Collateral except in accordance with the terms and

conditions contained in this Final Order.  Nothing in this Final Order shall authorize the disposition

of any assets of the Debtor, its estate or other proceeds resulting therefrom outside the ordinary

course of business, except as permitted herein (subject to any required Court approval).

F.      The SBA asserts that the Debtor is indebted to it under various contracts, notes,

security agreements and other loan instruments entered into prior to the Petition Date (generally,

the "SBA Indebtedness").   The SBA asserts that the SBA Indebtedness totals approximately

$523,503.18 as of the Petition Date.  The SBA asserts that the SBA Indebtedness is secured by a

first priority lien or liens on all or on substantially all of the Debtor's assets (the "SBA Collateral")

and that all proceeds from the use or sale of the SBA Collateral constitutes the SBA's cash

collateral (the "SBA Cash Collateral").

G.      Idea asserts that the Debtor is indebted to it under various contracts, notes, security

agreements and other loan instruments entered into prior to the Petition Date (generally, the "Idea

Indebtedness"). Idea asserts that the Idea Indebtedness totals approximately $156,000.00 as of the

Petition Date. Idea asserts that the Idea Indebtedness is secured by a second priority lien or liens

on all or on substantially all of the Debtor's assets (the "Idea Collateral") and that all proceeds

from the use or sale of the Idea Collateral constitutes Idea Collateral's cash collateral (the "Idea

Cash Collateral," and collectively with the SBA Cash Collateral, the "Cash Collateral").

H.      The Debtor asserts a need for the use of the Cash Collateral in order to continue the

operations of its business.

I.      Good, adequate, and sufficient cause has been shown to justify the granting of the

relief requested herein. The Debtor's final use of Cash Collateral is necessary to preserve the

bankruptcy estate and to avoid immediate and irreparable harm to the Debtor, its bankruptcy estate

and assets. Accordingly, it is therefore and hereby:

**ORDERED, ADJUDGED, AND DECREED that:**

1.      On the record before this Court, including the record made at the Final Hearing,

and good and sufficient cause appearing therefor, the Motion is hereby granted on a final basis in

accordance with the terms of this Final Order. Any objections to the Motion with respect to the

entry of this Final Order that have not been withdrawn, waived or settled are hereby denied and

overruled. This Final Order shall constitute findings of fact and constitute conclusions of law

pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable as of the date of the

execution of this Final Order.

**Use of Cash Collateral.**

2.      Subject to the terms and conditions of this Final Order, the Debtor is authorized,

pursuant to §363(c)(2) of the Bankruptcy Code to collect and use Cash Collateral from the date of

this Final Order.  Subject to the terms and conditions of this Final Order, the Debtor may use Cash

Collateral in the ordinary course of its business solely to pay ordinary and necessary expenditures,

determined in its reasonable business judgment to be necessary for its continuing operation (the

"Expenditures").

**Replacement Lien.**

3.       As adequate protection pursuant to Sections 361 and 363 of the Bankruptcy Code

of Secured Creditors' security interest in the Secured Creditors' Collateral, including Cash

Collateral used by the Debtor, the Secured Creditors shall be granted post-petition security

interests in, and replacement lien (the "Replacement Liens") upon, subject only to prior non-

avoidable liens, claims, or interests in the Debtor's assets and property of every kind; *provided*

*that* such Replacement Liens shall only be to the extent, priority, and validity as existed on such

assets and property of the Debtor as of the Petition Date.  Notwithstanding the foregoing, the

Secured Creditors will not receive a security interest in, or a replacement lien on, the Debtor's

avoidance actions under chapter 5 of the Bankruptcy Code.  The Replacement Liens shall serve as

adequate protection for the use of the Cash Collateral to the extent of any diminution of the value

of the collateral securing the claim of the Secured Creditors.

**Effectiveness of Replacement Liens.**

4.       All liens and security interests granted pursuant to this Final Order are hereby

deemed effective, valid, and perfected as of the Petition Date—to the extent the original security

interests of the Secured Lenders were valid and perfected as of the Petition Date—without the

necessity of filing or recording by or with any entity of any documents or instruments otherwise

required to be filed or recorded under applicable non-bankruptcy law. Notwithstanding, the Debtor

shall execute and deliver to the Secured Lenders any and all instruments or documents as may be

reasonably requested by the Secured Lenders and deemed by them to be necessary to evidence or

perfect such Replacement Liens, and the automatic stay of section 362 is hereby modified to the

extent necessary to permit such execution, delivery, and filing.

**Administrative Expense Priority.**

5.      To the extent of any diminution in value of their respective collateral, the Secured

Lenders shall have an administrative expense pursuant to section 507(b) of the Bankruptcy Code

in the Debtor's Chapter 11 Case and against the Debtor's bankruptcy estate for the Debtor's use

of Cash Collateral to the extent of any diminution in the value of the Secured Lenders' interest in

its collateral and the administrative claim shall have priority over and above all other costs and

expenses of the kind specified in, or ordered pursuant to, sections 503(b) or 507(a) of the

Bankruptcy Code except as provided herein.

**Events of Default.**

6.      The Debtor's authority to use Cash Collateral pursuant to this Final Order shall

terminate upon the occurrence and continuation of any of the following events past the applicable

cure period, if any, each of which shall constitute an "Event of Default":

> (a) The Debtor's Chapter 11 Case is converted to a case under Chapter 7 of the
>
> Bankruptcy Code;
>
> (b) This Court removes the Debtor as debtor-in-possession under 11 U.S.C. §
>
> 1181(a), provided, however, that it shall not be an event of default for the Court
>
> to remove the Debtor from possession on the request of the Secured Lenders;

(c) Any default under, breach of or failure to comply with, any provisions of this Final Order, which breach is not cured within ten business days after the Debtor's receipt of written notice thereof;

**Remedies for Event of Default.**

7.      Upon the occurrence and continuation of any Event of Default past the applicable cure period, the Secured Lenders shall be entitled to the following rights and remedies, which are cumulative in nature:

(a)     The Secured Lenders may immediately terminate its consent to the use of its Cash Collateral.

(b)     The Secured Lenders may seek relief from the automatic stay to exercise all rights and remedies with respect to its Collateral upon an expedited basis with at least 72 hours' notice of the hearing.

(c)     Upon entry of an order lifting the automatic stay under section 362, the Debtor shall assemble and deliver all Collateral to its respective owner at the Debtor's place of business.

**No Prejudice and Reservation of Rights.**

8.      Notwithstanding any provision of this Final Order to the contrary, nothing in the Final Order shall constitute or be deemed to constitute a waiver of any rights, remedies, claims or defenses the Secured Lenders may have pursuant to its respective loan documents, provided for by the Bankruptcy Code or applicable non-bankruptcy law, including the right to move for relief from the automatic stay or to seek a modification of this Final Order. The rights and obligations of the Debtor and the rights and security interests of the Secured Lenders arising out of this Final

Order are in addition to, and are not intended as a waiver or substitution for any right, remedy, lien

or security interest granted under the parties' respective loan documents.  Nothing in this Order

shall in any way affect the Secured Lenders', or the Debtor's right to later challenge the extent,

validity, or priority of any lien, claim, or encumbrance asserted by any party against any of the

Debtor.

**Effective Date.**

9.      This Final Order shall not be effective unless and until an order approving this Final

Order is entered by the Bankruptcy Court. Regardless of the date and time that such order is entered

by the Clerk of the Bankruptcy Court, this Final Order shall take effect and be binding upon the

parties as of the date of the execution of this Final Order.

**Effect of Termination.**

10.     The rights and obligations of the Debtor and the Secured Lenders with respect to

all transactions which occur prior to any termination of the authority of the Debtor to use Cash

Collateral pursuant to the Final Order, including, without limitation, the validity, priority and

extent of the Replacement Liens and any administrative priority claims under Section 507(b)

provided for herein, shall remain unimpaired and unaffected by, and shall survive any such

termination.

**Reversal or Vacation of Court Order.**

11.     Any reversal, modification, or vacation of this Final Order shall not affect the

validity or priority of any obligation of the Debtor to the Secured Lenders incurred or arising by

operation of law, or any security interest or lien granted to the Secured Lenders under the Final

Order, before the effective date of such reversal, modification or vacation. Notwithstanding the

entry of any subsequent stay or any such reversal, modification or vacation, all uses of the Cash

Collateral, and the security interest or liens granted to the Secured Lenders under this Final Order

before the effective date of any such stay, reversal, modification or vacation shall be governed in

all respects by the original provisions of this Final Order and the Secured Lenders shall be entitled

to all the rights, privileges and benefits with respect to all such uses, obligations, security interests,

and liens.

**No Admissions or Waivers.**

12.     Notwithstanding any provisions of this Final Order to the contrary:

(a)     Nothing herein shall constitute or be deemed to constitute an admission by

the Debtor, or the Secured Lenders or constitute a wavier or estoppel of any

legal position of any party.

(b)     Nothing herein shall prejudice the rights of the Secured Lenders in any

manner whatsoever, including without limitation to (i) object to the

sufficiency of the terms of this Final Order respecting the Debtor's further

use of Cash Collateral beyond the authorization provided for herein, (ii)

seek further adequate protection under section 361 and 363 of the

Bankruptcy Code, (iii) seek relief from the automatic stay under sections

362(d)(1), (d)(2) or (d)(3) of the Bankruptcy Code, (iv) oppose, contest,

challenge or defend any motion, complaint or other pleading for relief filed

by the Debtor in this or any other Court, or to assert any defense,

counterclaim or cross-claim cognizable under the Bankruptcy Code or

applicable non-bankruptcy law, (v) seek a modification or termination of

this Final Order for cause, or (vi) seek any other relief whatsoever at any time;

(c)    Conversely, nothing contained in this Final Order shall prejudice the rights of the Debtor in any manner whatsoever, including without limitation, to seek continued use of Cash Collateral beyond any authorization set forth herein, (ii) oppose, contest, challenge or defend any motion, complaint or other pleading for relief filed by the Secured Lenders in this or any other Court, or to assert any defense, counter-claim or cross-claim cognizable under the Bankruptcy Code or applicable non-bankruptcy law or (iii) seek any other relief whatsoever.

**Validity and Priority of Liens.**

13.    The Debtor reserves the right to contest the validity and priority of the liens of the Secured Lenders that secure its respective prepetition indebtedness, and nothing in this Order shall be deemed an acknowledgement of or agreement to the extent, priority, or validity of any party's alleged liens, claims, or encumbrances against any of the Debtor or its assets.

14.    Notwithstanding any other provisions included in this Order, or any agreements approved hereby, any statutory liens (collectively, the "Tax Liens") of ad valorem tax authorities that secure pre- and post-petition ad valorem taxes shall not be primed by nor made subordinate to any liens and/or claims granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of such claims and liens asserted by ad valorem tax authorities are fully preserved.  Further,

the statutory Tax Liens are deemed to be senior to the Secured Lenders' liens to the extent provided by Texas law.

**Successors.**

15.    This Final Order shall be binding upon and inure to the benefit of the parties, and its respective successors and assigns, including any successor trustee appointed in this case.

**Effect on Non-Signatories.**

16.    The representations and agreements of the parties set forth in this Final Order shall not be binding upon or prejudice the rights of any party-in-interest not a signatory hereto, including, without limitation, the subchapter V trustee.

**Notice.**

17.    Any notice required to be given pursuant to the terms of this Final Order may be given by email, facsimile, first class mail or overnight delivery, and shall be valid on the date given if by email or facsimile at or before 5:00 p.m., Central Time, or the next business day if received thereafter, on the actual date of delivery if by overnight mail, or three (3) days after deposit in the mail if by first class mail, and shall be delivered as follows:

JM4 Tactical LLC
c/o Brandon J. Tittle
Tittle Law Group, PLLC
5465 Legacy Dr., Ste. 650
Plano, Texas 75024
btittle@tittlelawgroup.com

Subchapter V Trustee
Attn. Brad W. Odell
Mullin Hoard & Brown, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408
bodell@mhba.com

United States Trustee
c/o Erin Schmidt
1100 Commerce Street, Room 976,
Dallas, Texas 75242
Erin.Schmidt2@usdoj.gov

**Carve-Out.**

18.     There shall be a carve-out for fees payable under 28 U.S.C. § 1930; and professional fees and expenses in the approved amounts in the 13-week cash flow budget (the "Budget"); and fees and expenses for the Subchapter V Trustee (the "Carve-Out") that is not subject to any protections granted to the Secured Lenders under this Final Order or the loan documents unless the entire Carve-Out is not approved for payment by the Court. Attached to this Order at **Exhibit A** is a true and correct copy of the Budget.  The Carve-Out shall mean an amount equal to the sum of the following: (a) all accrued and unpaid fees, disbursements, costs and expenses of professionals or professional firms retained by the Debtor; and (b) all accrued and unpaid fees for the Subchapter V Trustee. However, nothing in this Final Order shall be construed to impair the right of any party to object to any fees, expenses, reimbursement or compensation sought by any such professionals or any other person or entity.  Any legal and professional fees set forth in the attached Budget remain subject to interim and final allowance by this Court and remain subject to all applicable provisions of the Bankruptcy Code and the Local Rules, including, but not limited to, 11 U.S.C. §§ 327 and 330. The Carve-Out will survive termination of this Final Order, any final order allowing the use of cash collateral, and any termination or expiration of The Debtor's right to use Cash Collateral under this Final Order.

**Miscellaneous.**

19.     Pursuant to Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry. To the extent applicable, the 14-day stay set forth in Bankruptcy Rule 4001(a)(1) is hereby waived.

20.     To the extent there is a conflict between the terms of this Final Order and the terms of the Motion, this Final Order shall control.

21.     This Court has and will retain jurisdiction to enforce this Final Order according to its terms.

# # # END OF ORDER # # #

## EXHIBIT A

**13-Week Cash Flow Budget**

JM4 Tactical

| Week Ending | 2/24/2024 | 3/2/2024 | 3/9/2024 | 3/16/2024 | 3/23/2024 | 3/30/2024 | 4/6/2024 | 4/13/2024 | 4/20/2024 | 4/27/2024 | 5/4/2024 | 5/11/2024 | 5/18/2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 10,000.00 | 11,823.42 | 5,183.80 | 6,316.65 | 21,818.03 | 26,669.41 | 15,823.71 | 12,547.09 | 13,679.47 | 15,193.85 | 16,233.23 | 13,494.61 | 14,627.99 |
| Total Sales | 25,000 | 26,000 | 25,000 | 40,000 | 40,000 | 25,000 | 26,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| **USES** | | | | | | | | | | | | | |
| Costs of Goods Sold | 9,600 | 13,900 | 10,000 | 10,000 | 20,000 | 20,000 | 12,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Payroll & Taxes | 4,690 | 4,690 | 4,690 | 4,690 | 4,690 | 4,690 | 4,690 | 4,690 | 4,690 | 4,690 | 4,690 | 4,690 | 4,690 |
| Advertising | 4,000 | 4,000 | 4,000 | - | 5,000 | 5,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Rent | - | 3,694 | - | - | - | - | 3,694 | - | - | - | 3,694 | - | - |
| IT + Office Expenses | 228 | 1,000 | 1,285 | 200 | 200 | 200 | 1,000 | 1,285 | 200 | 200 | 1,000 | 1,285 | 200 |
| Insurance (General Liability) | 179 | 463 | - | 116 | 179 | 463 | | | 116 | 179 | 463 | | 116 |
| Insurance (Equipment) | - | - | - | | | | | | | | | | |
| Phone/Utilities | 587 | 1,000 | - | | 587 | 1,000 | | | 587 | 1,000 | | | |
| Shipping Expense | 1,200 | 1,200 | 1,200 | 1,800 | 1,800 | 1,800 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 |
| Total Operating Expenses | 20,484 | 29,947 | 21,175 | 21,806 | 32,456 | 33,153 | 26,584 | 21,175 | 20,793 | 21,269 | 25,047 | 21,175 | 20,206 |
| Professional Fees | 2,308 | 2,308 | 2,308 | 2,308 | 2,308 | 2,308 | 2,308 | 2,308 | 2,308 | 2,307 | 2,307 | 2,307 | 2,307 |
| Subchapter V Trustee Fees | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 | 385 |
| | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Professional Fees | 2,693 | 2,693 | 2,693 | 2,693 | 2,693 | 2,693 | 2,693 | 2,693 | 2,693 | 2,692 | 2,692 | 2,692 | 2,692 |
| Total Disbursements | 23,177 | 32,640 | 23,867 | 24,499 | 35,149 | 35,846 | 29,277 | 23,868 | 23,486 | 23,961 | 27,739 | 23,867 | 22,898 |
| Net Cash Flow | 1,823 | (6,640) | 1,133 | 15,501 | 4,851 | (10,846) | (3,277) | 1,132 | 1,514 | 1,039 | (2,739) | 1,133 | 2,102 |
| Ending Cash | 11,823 | 5,184 | 6,317 | 21,818 | 26,669 | 15,824 | 12,547 | 13,679 | 15,194 | 16,233 | 13,495 | 14,628 | 16,730 |