Brandon J. Tittle
Texas Bar No. 24090436
**TITTLE LAW GROUP, PLLC**
5465 Legacy Drive, Ste. 650
Plano, Texas 75024
Telephone: 972.731.2590
Email: btittle@tittlelawgroup.com

**ATTORNEY FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 24-10026** |
| **JM4 TACTICAL LLC,** | § | |
| | § | **Chapter 11 (Subchapter V)** |
| Debtor. | § | |

### SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION AS MODIFIED

JM4 Tactical LLC, the debtor and debtor in possession in the above-captioned case, hereby proposes the following Plan pursuant to § 1121 of the Bankruptcy Code. The Debtor is a proponent of the Plan within the meaning of § 1129 of the Bankruptcy Code.

This Plan constitutes a chapter 11 reorganization plan for the Debtor. In summary, the Plan provides for the Debtor to restructure its debts by reducing its monthly payments to the amount of the Debtor's Disposable Income. The Debtor believes that the Plan will ensure Holders of Allowed Claims will receive greater distributions under the Plan than they would if the Debtor's Chapter 11 Case was converted to Chapter 7 and the Debtor's Assets liquidated by a Chapter 7 Trustee.

Subject to the restrictions on modifications set forth in § 1193 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in this Plan, as a proponent, the Debtor expressly reserves the right to alter, amend, or modify the Plan one or more times before its confirmation, for the resolution of its outstanding Claims and Equity Interests, without prejudice to any Holders of Claims, Equity Interests or other parties in interest to object to same.

All Holders of Claims against, and Equity Interests in, the Debtor is encouraged to read the Plan in its entirety.

**NOTWITHSTANDING ANYTHING IN THIS PLAN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS PLAN CONCERNING THE DEBTOR'S HISTORY, THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON SECURED CREDITORS, UNSECURED CREDITORS, OR HOLDERS OF EQUITY INTERESTS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND**

**NOT ANY OTHER PARTY.**

## EXPLANATION OF THE PROCESS OF CONFIRMATION

Acceptance of the Plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

## VOTING PROCEDURES

**Unimpaired Class**. Claimants in Class 6 of the Debtor are not impaired under the Plan. Such Claimants are deemed to have accepted the Plan.

**Impaired Classes**. Claimants in Classes 1, 2, 3, 4, and 5 of the Debtor are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 1, 2, 3, 4, and 5. Each holder of an Allowed Claim in Classes 1, 2, 3, 4, and 5 may vote on the Plan by completing, dating, and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Tittle Law Group, PLLC, Attn. Brandon J. Tittle, Esq., 5465 Legacy Dr., Ste. 650, Plano, Texas 75036. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## BEST INTERESTS OF CREDITORS TEST

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estates' interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with at least as much as they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are

receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE I.
## DEFINITIONS

**1.1    Definitions**.

As used in the Plan, the following terms shall have the respective meanings specified below.  Any term used in the Plan not defined below or herein shall be interpreted in accordance with the Rules of Construction and Interpretation set forth in the following Articles of this Plan. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

"**Administrative Claims**" means a Claim for payment of an administrative expense of a kind specified in §§ 503(b), 507(b), and 1114(e)(2) of the Bankruptcy Code and referred to in § 507(a)(2) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred on or after the Petition Date for preserving the Estate of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtor incurred on or after the Petition Date but prior to the Effective Date, any indebtedness or obligations incurred or assumed by the Estate in connection with the conduct of the Debtor's business on or after the Petition Date and prior to the Effective Date, any Professional Fee Claim, all fees and charges assessed against the Estate under Chapter 123, Title 28, United States Code, and any Claim granted administrative-expense priority status by Final Order.

"**Allowance Date**" means the date on which a Claim is Allowed.

"**Allowed**" means a Claim or Equity Interest that: (a) is listed in the Schedules in a liquidated, non-contingent, and undisputed known amount, but only if no proof of Claim or proof of Equity Interest is filed with the Bankruptcy Court to evidence such Claim or Equity Interest on or before the Bar Date and no objection thereto has been timely filed; (b) is evidenced by a proof of Claim or proof of Equity Interest filed on or before the Bar Date, but only if no objection to the allowance of the Claim or Equity Interest or no motion to expunge the proof of Claim or Equity Interest has been timely filed; (c) is allowed by a Final Order; or (d) is otherwise allowed pursuant to the terms of the Plan.  Notwithstanding any other provision of the Plan, the term Allowed in reference to any Claim shall not include any Claim or Equity Interest held by any Claimant or purported Equity Interest Holder against whom the Debtor has asserted a Cause of Action by filing an objection or complaint/ petition with a court of competent jurisdiction.  No Allowed Claim or Equity Interest shall include any penalty or any interest accrued after the Petition Date, except as otherwise provided herein

"**Assets**" shall have the meaning ascribed in Section 3.2 of the Plan.

"**Avoidance Actions**" means any cause of action commenced, or that that may be commenced before or after the Effective Date, pursuant to §§ 510, 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code, including, without limitation, such actions that arise under state law for fraudulent conveyance and other similar avoidance actions.

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas, Abilene Division.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended and prescribed under section 2075, Title 28, United States Code, as applicable to the Chapter 11 Case, together with the Local Rules of the Bankruptcy Court.

"**Bar Date**" means the last date on which proofs of Claim may be timely filed against the Debtor unless otherwise extended by Final Order of the Bankruptcy Court, which is April 26, 2024, for all claimants.

"**Business Day**" means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"**Cash**" means Cash and cash equivalents.

"**Causes of Action**" means any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedy, right to equitable remedy, right to payment, and claim, including Avoidance Actions, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, including, without limitation: (a) any claim or right to recover damages (general, exemplary, or otherwise) relating to or based on (i) fraud, negligence, gross negligence, willful misconduct, or any tort actions, (ii) violations of federal or state securities laws, (iii) violations of applicable corporate or partnership laws, (iv) breaches of fiduciary or agency duties, (v) unjust enrichment, suit on a sworn account, accounting, quantum meruit, restitution, (vi) malpractice, (vii) breach of contract, (viii) conversion, (ix) recharacterization, (x) alter ego, aiding and abetting, conspiracy, *respondeat superior*, or other vicarious or secondary liability claims relating to all of the aforementioned claims, or (xi) any other claim of the Debtor against any party, to the extent not specifically compromised or released pursuant to the Plan, or a Final Order entered by the Bankruptcy Court after notice and opportunity for hearing; (b) any claims of the Debtor for subordination under § 510 of the Bankruptcy Code or under other applicable laws; (c) any objection to any Disputed Claim that includes as a basis any counterclaim by the Debtor or the Estate for affirmative relief, and is pending and not resolved by Final Order as of the Effective Date, together with all liability of the Debtor or the Estate on account of such Disputed Claims; and (d) all claims and defenses asserted by the Debtor in a contested matter or an adversary proceeding or other civil litigation. Causes of Action also specifically include:  (i) all Avoidance Actions; (ii) all tort and common law claims held by the Debtor against any person, including, without limitation, the following: (a) Persons that were or are joint venturers or partners with, or controlling persons of, the Debtor, (b) Governmental Units, including taxing authorities, (c) Holders of Equity Interests; and (iiii) all claims held by the Debtor whether in contract, tort, or statutory law against current or former: (a) customers, (b) Claimants, (c) officers, managers, members, and directors, (d) suppliers (including any person with whom the Debtor ever did business), (e) employees, (f) managers and affiliates, and (g) insurers (including, without limitation, for directors and officers liability coverage, business interruption, or similar claims).

"**Chapter 11 Case**" **or** "**Case**" means Debtor's bankruptcy case commenced by the filing of voluntary petition for relief for the Debtor on February 16, 2024, under chapter 11 of the Bankruptcy Code, administered under Case No. 24-10026 pending before Bankruptcy Judge Robert L. Jones in the Bankruptcy Court.

"**Claim**" means any right to payment from the Debtor or its Estate, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown; or any right to an equitable remedy against the Debtor or its Estate for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, known or unknown or as otherwise within the definition of "claim" as set forth in § 101(5) of the Bankruptcy Code

"**Claimant**" means a Person holding a Claim against the Debtor, property of the Debtor, the Estate, or any Asset.

"**Claims Objection Deadline**" shall be one hundred and eighty (180) days after the Effective Date, unless such date is extended by the Bankruptcy Court upon motion filed with the Bankruptcy Court by the Reorganized Debtor on or prior to such date.

"**Class**" means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to § 1122 of the Bankruptcy Code.

"**Clerk**" means the Clerk of the Bankruptcy Court.

"**Collateral**" means any property or interest in property of the Estate that is subject to a Lien to secure the payment or performance of a Claim, which such Lien is not avoided, subject to avoidance under the Bankruptcy Code, or other applicable law or otherwise invalid under the Bankruptcy Code or applicable law.

"**Confirmation**" means the entry of the Confirmation Order on the docket in the Chapter 11 Case.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the Order of the Bankruptcy Court, and any amendment thereto, confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"**Contingent Claim**" means a Claim for which the Debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event.

"**Debtor**" means JM4 Tactical LLC, the Debtor and Debtor-in-Possession in the Chapter

11 Case.

**"Debtor-in-Possession"** means the Debtor in its capacity as a debtor-in-possession pursuant to § 1184 of the Bankruptcy Code.

**"Deficiency Claim"** means any portion of a Secured Claim (a) to the extent the value of the Collateral securing such Claim is less than the amount of such Claim or (b) to the extent the amount of the Claim that is secured by a right of setoff is less than the amount of such Claim, each as determined pursuant to § 506(a) of the Bankruptcy Code.

**"Disallowed"** means a Claim or Equity Interest, any portion thereof, that: (a) has been disallowed by either a Final Order or pursuant to a settlement; (b) has been withdrawn by the Holder of the Claim or Equity Interest; (c)(i) is set forth in the Schedules at zero or as contingent, disputed, or unliquidated and (ii) as to which no proof of Claim or proof of Equity Interest has been filed or deemed filed with the Bankruptcy Court by the Bar Date or pursuant to either the Bankruptcy Code or a Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; or (d) has not been scheduled in the Schedules and as to which no proof of Claim or Equity Interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or the Plan.

**"Disposable Income"** means the income that is received by the Debtor from its business operations, including all proceeds received by the Reorganized Debtor from the sale of magnetic gun holsters and other stone material, that is not reasonably necessary to be expended for the payment of its expenditures necessary for the continuation, preservation, or operation of the Debtor's business.

**"Disputed Claim"** means the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of Claim has been filed or deemed filed under applicable law or Order of the Bankruptcy Court; (b) an objection has been filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the Claim Objection Deadline, a Claim shall be considered a Disputed Claim: (a) if the amount or classification of the Claim specified in the proof of Claim exceeds the amount or classification of any corresponding Claim scheduled by the Debtor in its Schedules, to the extent of such excess; (b) in its entirety, if any corresponding Claim scheduled by the Debtor has been scheduled as disputed, contingent, or unliquidated in its Schedules; (c) in its entirety, if no corresponding Claim has been scheduled by the Debtor in its Schedules; or (d) such Claim is otherwise objectionable.

**"Distribution"** means the property distributed to the Holders of Allowed Claims in accordance with the Plan, Confirmation Order, and Bankruptcy Code.

**"Effective Date"** means thirty (30) days after the Court enters an order confirming the Plan.

**"Entity"** means an entity as such term is defined in § 101(15) of the Bankruptcy Code.

**"Equity Interest"** means any ownership interest in the Debtor represented by shares of stock, or membership or partnership interest in the Debtor, including, to the extent provided by

applicable law, any warrant, option, or other security to acquire any of the foregoing in the Debtor.

"**Estate**" means the bankruptcy Estate created on the filing of the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code, together with all rights, claims and interests appertaining thereto.

"**Face Amount**" means (i) as to a Disputed Claim, the full stated amount claimed by the Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court, and (ii) as to an Allowed Claim, the full stated amount of such Claim claimed by the Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court or the amount reflected in a Final Order or in the Schedules, as amended, if such claimant was not required to file a proof of Claim by reason of the Bankruptcy Rules, or in an amount agreed to by the Holder of such Claim and the Debtor.

"**Final Order**" means an order or judgment under 28 U.S.C. § 158(a)(1) of the Bankruptcy Court or other court having jurisdiction over any matter that (a) has not been reversed, stayed, or vacated, (b) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired, and no such action has occurred, or (c) if a timely appeal is filed, upon completion of the appellate process either through the expiration of an initial deadline for invoking further appellate jurisdiction or, if in the United States Supreme Court, through the issuance of that Court's final decision; *provided*, *however*, no order shall fail to be a Final Order because of the possibility that a motion pursuant to Rules 59 or 60 of the Federal Rules of Civil Procedure (and Bankruptcy Rules 9023 and 9024, respectively) may be filed to that order.

"**First State Bank**" means First State Bank.

"**First State Bank Secured Claim**" means the Secured Claim of First State Bank in the amount of $18,537.73 as of the Petition Date.  The debt owed to First State Bank is secured by a Lien or Liens on the Debtor's 2019 Ford F-250 Crew Cab Truck.

"**Governmental Unit**" means a governmental unit as such term is defined in § 101(27) of the Bankruptcy Code.

"**Holder**" means any Entity holding a Claim or an Equity Interest.

"**Impaired**" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

"**Injunction Beneficiaries**" means the Injunction Beneficiaries as defined in Section 11.4 of the Plan.

"**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation, including, but not limited to, a mortgage, deed-of-trust lien, security interest, judicial lien, judgment lien, pledge, encumbrance, or writ of attachment.

"**Order**" Any order, mandate, precept, command, or direction formally given or entered by court of competent jurisdiction.

"**Person**" means as identified in § 101(41) of the Bankruptcy Code and includes an

individual, corporation, partnership, joint venture, association, limited liability company, limited liability partnership, trust, Estate, unincorporated organization, governmental entity or political subdivision thereof, or any other entity.

"**Petition Date**" means February 16, 2024, the date on which the Debtor filed its voluntary chapter 11 petition commencing the Chapter 11 Case.

"**Plan**" means this Second Amended Chapter 11 Plan of Reorganization as Modified, as it may be amended or modified.

"**Plan Documents**" means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date.

"**Post-Confirmation Service List**" means a list of parties-in-interest to whom post-confirmation service of process shall be provided.  The Post-Confirmation Service List shall be limited, and shall consist of only (a) the Debtor, (b) the Subchapter V Trustee, (c) the United States Trustee, (d) any party who after entry of the Confirmation Order files a request for such notice with the Clerk, and (e) counsels/attorneys of records of the parties identified in (a) – (d).

"**Prime**" shall mean the prime interest rate that runs approximately 300 basis points (or 3 percentage points) above the federal funds rate, which is the interest rate that banks charge each other for overnight loans made to fulfill reserve funding requirements.  As of February 13, 2024, the prime interest rate is 8.50% in the United States.

"**Priority Claim**" shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

"**Proof of Claim**" or "**Proof of Interest**" means a proof of claim or proof of interest, as the case may be, filed with the Bankruptcy Court with respect to the Debtor pursuant to § 501 of the Bankruptcy Code and Bankruptcy Rules 3001, 3002, or 3003 in accordance with the various orders of the Bankruptcy Court.

"**Proponent**" means the Debtor.

"**Pro Rata**" means the proportion that the dollar amount of an Allowed Claim in a Class bears to the aggregate amount of all Allowed Claims in such Class or if distribution is to multiple Classes of equal priority, the aggregate amount of all Allowed Claims in such Classes.

"**Reorganized Debtor**" means the post-Effective Date Debtor.

"**SBA**" means the U.S. Small Business Administration.

"**SBA Secured Claim**" means the Secured Claim of the SBA in the amount of $20,000.00 as of the Petition Date.  The debt owed to the SBA is secured by a Lien or Liens on all or substantially all of the Debtor's Assets.

"**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial

Affairs filed by or on behalf the Debtor in its Chapter 11 Case pursuant to § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as they have been or may hereafter be amended, modified or supplemented.

**"Secured Claim"** means a Claim, if any, that is (a) secured by a valid, perfected and enforceable Lien under applicable state law or by reason of a Final Order on property in which one or more Debtor's Estate has an interest to the extent of the value of such property, or (b) subject to a permissible setoff under § 553 of the Bankruptcy Code, to the extent of such permissible setoff, in each case, as determined in accordance with § 506(a) of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the Holder of such Claim.

**"Subchapter V Trustee"** means Brad W. Odell, as the Subchapter V Trustee appointed in this Chapter 11 Case.

**"Tax Claim"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities.

**"Taylor County Secured Claim"** means the Secured Claim of Taylor County CAD in the amount of $8,585.92 as of the Petition Date.  The debt owed to Taylor County is secured by a Lien or Liens on the Debtor's personal property.

**"Unsecured Claim"** means a Claim against the Debtor, other than Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

All terms not expressly defined herein shall have the respective meanings given to such terms in § 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code.  The rules of construction set forth in § 102 of the Bankruptcy Code shall apply. Further, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Unless otherwise specified herein, any reference to an individual or Entity as a Holder of a Claim or Equity Interest includes that individual's or Entity's successors, assigns and affiliates.

## ARTICLE II.
## RULES OF CONSTRUCTION AND INTERPRETATION

**2.1    Rules of Construction**.  The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular article, section, subsection or clause contained in this Plan, unless the context requires otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter.  Captions, articles, and section headings in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan. Any phrase containing the term "include" or "including" means including without limitation without the necessity of repeating same in each instance.  The rules set forth in § 102 of the Bankruptcy Code shall apply in the construction of the Plan to the extent that such rules are not inconsistent with any other provision of this Article of the Plan.

A capitalized term used in this Plan and not defined herein but that is defined in the Bankruptcy Code has the meaning assigned to the term in the Bankruptcy Code. A capitalized term used in this Plan and not defined herein or in the Bankruptcy Code but is defined in the Bankruptcy Rules has the meaning assigned to the term in the Bankruptcy Rules.

**2.2** <u>**Governing Law**</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements; in which case, the governing law of such agreement shall control).

### ARTICLE III.
### BACKGROUND

**3.1** <u>**Description and History of the Debtor's Business**</u>. Founded in 2016, the Debtor is a family owned and operated, gun holster manufacturing company. Specifically, the Debtor manufactures magnetic retention conceal carry gun holsters that provide unmatched comfort, versatility, and quality to its users. The Debtor sells its magnetic retention conceal carry gun holsters to customers across the United States. The Debtor currently operates out of its storefront location in Abilene, Texas. The Debtor has 6 employees. Due to cash flow issues resulting from a drop in revenue in the year 2023, the Debtor was unable meet its monthly debt obligations. Making matters worse, the Debtor was unable to secure additional capital to fund operations. The net effect was that the Debtor did not have sufficient liquidity to continue its business outside the protection of the Bankruptcy Court and was forced to seek relief pursuant to Chapter 11 of the Bankruptcy Code.

**3.2** <u>**Description of Debtor's Main Assets**</u>. The Debtor's Assets include its: (i) inventory; (ii) office equipment and furniture; and (iii) accounts receivable.

**3.3** <u>**Post-Confirmation Management**</u>. The Debtor is currently owned by James Chad Myers and Shawndalyn Myers with each owning 50% of the Debtor. After confirmation, Mr. and Mrs. Myers will remain the owners of the Debtor.

**3.4** <u>**Debtor's Compliance with the Code**</u>. The Debtor has filed this Plan in good faith. The Debtor represents that the information contained herein is true and correct to the best of its knowledge and understanding. The Debtor believes that the Plan complies with all applicable provisions of the Code. The Debtor does not believe that Subsections (a)(6), (a)(13), (a)(14), and/or (a)(15) of Section 1129 of the Code are applicable to the Debtor or the Plan. The Debtor affirmatively asserts that the Plan complies with the applicable provisions of the Code ((a)(1)), and has been proposed in good faith and not by any means forbidden by law ((a)(3)). Further, the Debtor affirmatively asserts that they have complied with the applicable provisions of the Code ((a)(2)). The Debtor affirmatively asserts that the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor ((a)(11)).

**3.5** <u>**Liquidation Analysis**</u>. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan

as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached as **Exhibit A** and shows that all creditors of the Debtor would receive payment in full of their Allowed Claims in a Chapter 7 liquidation. All Allowed Secured Claims will be paid in full under this Plan. The equity interests shall retain their ownership.

**3.6    Ability to Make Future Plan Payments and Operate without Further Reorganization**.  The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.  Attached hereto as **Exhibit B** are projections of gross income, expenses and operating income for the next twelve (12) months. It is anticipated that after confirmation, the Debtor will continue in business.  Based upon the projections, the Debtor believes it can service the debt to creditors.

**ARTICLE IV.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

Pursuant to § 1122 of the Bankruptcy Code, and for the purposes of organization, and all confirmation matters, <u>except</u> as otherwise provided herein, all Claims against and all Interests in the Debtor shall be classified as set forth in this Article IV.

**4.1    Administrative Claims**.  As provided in § 1123(a) of the Bankruptcy Code, Administrative Claims shall not be classified; theyare therefore excluded from the Classes of Claims and Interests set forth below.

**4.2    Classes of Claims and Interests**.  A Claim or Interest is in a particular Class onlyto the extent the Claim or Interest is an Allowed Claim or Allowed Interest. For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims(except for Administrative Claims) and Interests shall be classified as follows:

| Class | Type of Allowed Claim or Interest | Treatment |
|---|---|---|
| 1 | Allowed Priority Tax Claim | The Debtor shall pay the Holder of Allowed Priority Tax Claim, which only includes the claim of the Texas Comptroller of Public Accounts, the full amount of its claim of $6,775.26 plus interest in sixty (60) consecutive monthly payments of $142.29, which includes interest at the rate of 9.5%.  The monthly payments shall commence thirty days after the Effective Date. |
| 2 | Allowed Taylor County Secured Claim | The Debtor shall pay the Holder of the Taylor County Secured Claim the full amount of its claim of $8,584.92 plus interest in twelve (12) equal, consecutive, monthly payments of $800, which includes interest at the rate of 1% per month and 12% per annum.  The monthly payments shall commence thirty days after the Effective Date. |
| 3 | SBA Secured Claim | The Debtor shall pay Holder of the Allowed SBA Secured Claim sixty (60) consecutive monthly payments of $366.08 commencing thirty (30) days after the Effective Date, which is based on a sixty (60) month amortization schedule of the SBA Secured Claim at the contract interest rate of 3.75%. |
| 4 | First State Bank Secured Claim | The Debtor shall pay Holder of the Allowed First State Bank Secured Claim a one-time payment of $375.07 within thirty (30) days of the Effective Date to pay late charges and past-due interest.  The Debtor shall also pay twenty-four (24) consecutive monthly payments of |

| | | $845.79 commencing thirty (30) days after the Effective Date, which is based on a sixty (60) month amortization schedule of the Allowed First State Bank Secured Claim at the fixed interest rate of Prime plus two percent, or 10.5% interest. |
| 5 | Allowed General Unsecured Claims | In the event the Plan is consensual plan pursuant to Section 1191(a) and 1129(a), the Debtor shall make 60 consecutive monthly payments commencing thirty (30) days after the Effective Date of $942.64. The Holders of Allowed Unsecured Claims shall receive their pro rata share of the monthly payment. In the event the Plan is a nonconsensual plan under Section 1191(b), the Debtor shall calculate its Disposable Income each month and shall distribute the Disposable Income to the Holders of Unsecured Claims once every three months commencing thirty (30) days after the Effective Date. The Holders of Allowed Unsecured Claims shall receive their pro rata share of the Disposable Income payment. |
| 6 | Allowed Equity Interests in the Debtor | Remains vested with James Chad Myers and Shawndalyn Myers. |

## ARTICLE V.
## TREATMENT OF UNCLASSIFIED CLAIMS

### 5.1   Administrative Expense Claims.

**5.1.1**   Time for Filing Administrative Expense Claims. Thirty (30) days after the Effective Date is the deadline for parties to file all requests for payment of Administrative Expense Claims. Any Administrative Expense Claim for which an application or request was not filed by the Administrative Claim Bar Date is released and forever barred, and shall not be entitled to any Distribution of any kind or character under this Plan. The Plan shall constitute adequate and proper notice of such deadline. Such an application or request for such Administrative Expense Claim must include, at a minimum, (a) the name of the Holder of the Claim, (b) the amount of the Claim, (c) the basis for the Claim, (d) a detailed statement as to why such Claim is not subject to the Administrative Expense Claim Bar Date, and (e) all documents supporting such Claim. The United States Trustee is not required to file an application for the allowance of an Administrative Expense Claim with regards to fees due in accordance with 28 U.S.C. § 1930(a)(6).

**5.1.2**   Treatment of Administrative Expense Claims. Except to the extent that any Person entitled to payment of an Administrative Expense Claim agrees otherwise, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) shall, in full and final satisfaction of any Administrative Expense Claim, receive sixty (60) equal consecutive monthly payments commencing ninety (30) days after the Effective Date, or when such administrative expense claim becomes an Allowed Administrative Expense Claim, whichever occurs later.

### 5.2   **Professional Compensation and Reimbursement Claims**. All requests for allowance and payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on the Post-Confirmation Service List no later than thirty (30) days after the Effective Date. Any such Professional Fee Claim for which an application or request for payment is not filed with the Bankruptcy Court within that time period shall be released and forever barred, and shall not be

entitled to Distributions under the Plan. Objections to the payment of such Professional Fee Claims must be filed no later than seven (7) days prior to the hearing on such Professional Fee Claims. Professional Fee Claims shall be paid within seven (7) days upon the entry of an Order from the Bankruptcy Court approving the professional's fees.

**5.3    Payment of Statutory Fees and Post-Petition Date Taxes**. Notwithstanding anything herein, all fees payable pursuant to 28 U.S.C. § 1930 and all Claims of a Governmental Unit of the type described in § 503(b)(1)(B)-(C) of the Bankruptcy Code that were filed prior to the Administrative Claim Bar Date shall be treated as Allowed Administrative Expense Claims when such amounts become due and payable by the Debtor under applicable non-bankruptcy law. The dates on which those claims become due shall be their Allowance Date.

**5.4    Payment of Subchapter V Trustee Fees.** All approved Subchapter V Trustee fees will be paid within seven (7) days of final Court approval of such fees.

## ARTICLE VI.
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**6.1    Class 1 Claimant (Allowed Priority Tax Claim)** is unimpaired and shall be satisfied as follows:  As of the date of this Plan, the Debtor believes the amount due to the Texas Comptroller of Public Accounts is $6,775.26.  The Debtor shall pay the Holder of the Allowed Priority Tax Claim sixty equal, consecutive, monthly payments of **$142.29**, which includes interest at the rate of 9.5%.  The monthly payments shall commence thirty days after the Effective Date. Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtor or Reorganized Debtor, from any liability owed to the Texas Comptroller of Public Accounts for a tax debt, including interest and penalties on such tax.  This provision is not admission by any party that such liability exists. Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Comptroller's setoff rights under 11 U.S.C. § 553. This provision is not admission by any party that such setoff rights exist.

A failure by the reorganized Debtor to make a payment to the Texas Comptroller of Public Accounts pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized Debtor fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Texas Comptroller of Public Accounts, the Texas Comptroller of Public Accounts may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the Debtor: 3250 S. Treadaway Blvd., Abilene, TX  79602, Attn Chief Executive Officer, and upon Debtor's attorney at:  Tittle Law Group, PLLC, 5465 Legacy Dr., Suite 650, Plano, TX  75024, Attn:  Brandon John Tittle, Esq.; btittle@tittlelawgroup.com.

The Debtor shall be allowed to cure up to two (2) defaults.  Upon a third default, the Comptroller, at its option, may declare the default non-cureable and proceed to collect the remainder of the debt.

The Class 1 Claimant is impaired.

**6.2    Class 2 Claimant (Allowed Taylor County Secured Claim)** is unimpaired and

shall be satisfied as follows:  As of the date of this Plan, the Debtor believes the amount due to Taylor County is $8,584.92.  The Debtor shall pay the Holder of the Taylor County Secured Claim twelve equal, consecutive, monthly payments of **$800.00**, which includes interest at the rate of 1% per month and 12% per annum.  The monthly payments shall commence thirty days after the Effective Date.  The Debtor shall pay the tax year 2025 and subsequent year ad valorem taxes prior to the state law delinquency date in the ordinary course of business, with all statutory penalties and interest to accrue thereon under the Texas Tax Code if the Debtor fails to do so.  Notwithstanding anything in the Plan to the contrary, Taylor County shall retain its tax liens for the 2023 and 2024 tax years until each such year's taxes are satisfied.  Notwithstanding anything in the Plan to the contrary, Taylor County shall be allowed to amend its estimated claim amount for tax year 2024 to the actual assessed amount, when available, without leave of Court.

A failure by the reorganized Debtor to make a payment to Taylor County pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized Debtor fails to cure an Event of Default as to tax payments within thirty (30) calendar days after service of written notice of default from Taylor County, Taylor County may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the Debtor: 3250 S. Treadaway Blvd., Abilene, TX  79602, Attn Chief Executive Officer, and upon Debtor's attorney at:  Tittle Law Group, PLLC, 5465 Legacy Dr., Suite 650, Plano, TX  75024, Attn: Brandon John Tittle, Esq.; btittle@tittlelawgroup.com.

The Debtor shall be allowed to cure up to two (2) defaults.  If the Debtor does not timely cure, or upon a third default, the automatic stay should terminate as to Taylor County and the Debtor's personal property and Taylor County would be authorized to pursue all of its state law remedies without further notice or order of the Court.

The Class 2 Claimant is impaired.

**6.3**    **Class 3 Claimant (Allowed SBA Secured Claim)** is impaired and shall be satisfied as follows: As of the date of this Plan, the Debtor believes the amount due to the SBA is $20,000.00.  The Debtor shall pay Holder of the Allowed SBA Secured Claim sixty (60) consecutive monthly payments of **$366.08** commencing thirty (30) days after the Effective Date, which is based on a sixty (60) month amortization schedule of the SBA Secured Claim at the contract interest rate of 3.75%.

The Class 3 Claimant is impaired.

**6.4**    **Class 4 Claimant (Allowed First State Bank Secured Claim)** is impaired and shall be satisfied as follows: As of the date of this Plan, the Debtor believes the amount due to First State Bank is $18,537.73.  The Debtor concedes that First State Bank is fully secured based on its security interest and lien on the Debtor's 2019 Ford F-250 Crew Cab Truck.  The Debtor shall pay Holder of the Allowed First State Bank Secured Claim a one-time payment of **$375.07** within thirty (30) days of the Effective Date to pay late charges and past-due interest.  Based on an interest rate of Prime plus 2% (10.5%), The Debtor shall also pay twenty-four (24) consecutive monthly payments of **$845.79** commencing thirty (30) days after the Effective Date.  First State Bank shall retain its security interest in the 2019 Ford 2-250 Crew Cab Truck.

The Class 4 Claimant is impaired.

**6.5** **Class 5 Claimants (Allowed Unsecured Claims)** are impaired and shall be satisfied as follows: In the event the Plan is a consensual plan pursuant to Sections 1191(a) and 1129(a), the Debtor shall make 60 consecutive monthly payments commencing thirty (30) days after the Effective Date of **$942.64**.[1] The Holders of Allowed Unsecured Claims shall receive their pro rata share of the monthly payment.

In the event the Plan is a nonconsensual plan under Section 1191(b), the Debtor shall calculate its Disposable Income each month and shall distribute the Disposable Income to the Holders of Unsecured Claims once every three months commencing thirty (30) days after the Effective Date. The Holders of Allowed Unsecured Claims shall receive their pro rata share of the Disposable Income payment.

The Class 5 Claimants are impaired.

**6.6** **Class 6 (Current Owners)** is unimpaired under the Plan and shall be satisfied as follows: The current owners will receive no payments under the Plan; however, they will be allowed to retain their ownership in the Debtor.

The Class 6 Claimants are unimpaired.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1** **Debtor, and Continued Operations**. From and after the Effective Date, the Debtor will continue to exist as a Reorganized Debtor. By reducing the Debtor's monthly obligations to creditors to the Reorganized Debtor's Disposable Income, the Reorganized Debtor will have sufficient cash to maintain operations and will allow the Reorganized Debtor to successfully operate following the Effective Date of the Plan.

**7.2** **Operations Between the Confirmation Date and Effective Date**. During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to operate its business as a debtor-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect. In addition, the Debtor may take all actions as may be necessary or appropriate to implement the terms and conditions of the Plan. Upon Confirmation of the Plan, all actions required of the Debtor to effectuate the Plan shall be deemed authorized and approved in all respects.

**7.3** **Nonconsensual Plan.** In the event the Plan is a nonconsensual plan under Section 1191(b), the corporate representatives of the Reorganized Debtor, Shawndalyn Myers and James Chad Myers, shall be responsible for calculating the Reorganized Debtor's Disposable Income every month commencing thirty (30) days after the Effective Date and disbursing the aggregate amount of Disposable Income every three months to the Holders of Unsecured Creditors based on

---

[1] This amount is based upon the Debtor's projection of net disposable income under 11 U.S.C. § 1191(d).

their pro rata share of the Debtor's Unsecured Claims.

**7.4    Post-Effective Date Plan Implementation**.  On and after the Effective Date, the Reorganized Debtor is authorized to and may issue, execute, deliver, File, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

**7.5    Exemption from Certain Taxes and Fees**.  Pursuant to § 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) the creation of any mortgage, deed-of-trust, lien, or other security interest, (ii) the making or assignment of any lease or sublease, (iii) any restructuring transaction authorized by the Plan, or (iv) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

**7.5    Settlement of Claims and Controversies**.  Pursuant to § 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for all Distributions under the Plan and other benefits provided under this Plan, the provisions of this Plan shall constitute a good-faith compromise and settlement of all Claims and controversies relating to the rights that a Holder of a Claim or Interest may have with respect to such Claim or Interest or any Distribution under the Plan on account of thereof.  If the Confirmation Order is not entered or the Effective Date does not occur, the Debtor reserves its rights with respect to all disputes resolved and settled under this Plan.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of each compromise and settlement embodied in the Plan, and the Bankruptcy Court's finding that all such compromises and settlements are (a) in the Debtor's and Estate's best interests and (b) fair, equitable and within the range of reasonableness.  The provisions of the Plan, including, without limitation, its release, injunction, exculpation, and compromise provisions are mutually dependent.

**7.6    Vesting of Assets**.  On the Effective Date, except as otherwise expressly provided herein, title to all Assets shall remain/vest in the Reorganized Debtor, as applicable, free and clear of all liens, Claims, Causes of Action, interests, rights, security interests, and other encumbrances and without further order of the Bankruptcy Court.

**7.7    Retention of Causes of Action**.  Pursuant to § 1123(b) of the Bankruptcy Code, all Causes of Action (including but not limited to, all Avoidance Actions), are hereby preserved by this Plan, notwithstanding the occurrence of the Effective Date.  Following the Effective Date and the vesting of the Causes of Action with the Reorganized Debtor, the Reorganized Debtor

shall retain the exclusive authority and all rights to enforce, commence, and pursue, as appropriate, any and all Causes of Action whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, settle, or otherwise dispose of such Causes of Action shall be preserved. Upon the Effective Date, and in accordance with the terms and conditions of this Plan, the Reorganized Debtor shall have all requisite standing and authority to administer the Causes of Action.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1** <u>**Assumption of Executory Contracts and Unexpired Leases**</u>. Except as otherwise provided herein or in any order of the Bankruptcy Court, on the Effective Date every Executory Contract identified on the attached Schedule of Assumed Executory Contracts shall be deemed Assumed upon the payment of the cure amount identified in that Schedule. The Debtor/Reorganized Debtor reserves the right to modify the treatment of an Executory Contract pursuant to this Plan. If a contract party objects to the treatment proposed in the Schedule of Assumed Executory Contracts, it must file an objection to this Plan or otherwise waives its right to object and shall be deemed to have consented to the assumption as proposed herein. Each Executory Contract on the Schedule of Assumed Executory Contracts shall be assumed only to the extent that it constitutes an executory contract or unexpired lease as contemplated by § 365 of the Bankruptcy Code. Nothing contained in this Plan constitutes an admission by the Debtor that any such contracts or leases are "executory" or that the Debtor has any liability thereunder. Further, such assumption is subject to the same rights that the Debtor held or holds on or after the Petition Date to modify or terminate such agreement(s) under applicable non-bankruptcy law. Each Executory Contract assumed pursuant to this section shall be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.

**8.2** <u>**Payments Related to Assumption of Executory Contracts**</u>. If not the subject of *bona-fide* dispute pursuant to this Article as of Confirmation, monetary defaults, if any, under each Executory Contract to be assumed under the Plan shall be satisfied by the Reorganized Debtor pursuant to § 365(b)(1) by payment in Cash of the amount set forth in the Cure Amounts identified on the Schedule of Assumed Executory Contracts or such other amount as ordered by the Bankruptcy Court or agreed to by the parties on or as soon after the Effective Date as practicable or on such other terms as agreed to by the parties to such Executory Contract. In the event of a *bona-fide* dispute pursuant to this Article, payment of the amount otherwise payable hereunder shall be made following entry of a Final Order or agreement by the Debtor and the party to the Executory Contract.

**8.3** <u>**Claims Based on Rejection of Executory Contracts of Unexpired Leases**</u>. Any Claim for damages arising from the rejection of an executory contract or unexpired lease pursuant to the Plan must be asserted in a proof of Claim filed with the Bankruptcy Court not later than thirty (30) days after the date on which the Executory Contract was rejected or deemed rejected. The Claimant shall have either a Class 5 General Unsecured Claim payable in accordance with the terms and conditions of this Plan. Any such rejection Claims not timely filed shall be released and forever barred from payment pursuant to this Plan. Any other bar date previously established for the filing of Claims based on the rejection of executory contracts or unexpired leases shall not be

affected by this provision.

# ARTICLE IX.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**9.1**   <u>**Objections to Claims**</u>.  Following the Effective Date, an objection to the allowance of any Claim shall be in writing and filed by the Reorganized Debtor.  Any Disputed Claim as to which an objection is not filed on or before the Claims Objection Deadline shall be deemed to constitute an Allowed Claim under the Plan following the Claims Objection Deadline.

**9.1.1**   <u>Alternative Standing</u>.  Notwithstanding the foregoing, any party in interest that otherwise would have standing to object to a Claim absent the provisions of this Plan, may, on or before the Claims Objection Deadline, file a motion with the Bankruptcy Court requesting standing to so object on the basis that an advance, written demand has been made by the movant on the Reorganized Debtor to object to the Claim, and that said Reorganized Debtor has unjustifiably refused or failed to respond.  Any such motion filed by the Claims Objection Deadline shall, if granted, toll the Claims Objection Deadline solely with respect to the Claim which is the subject of the motion, until and including the date which is ten (10) business days following the date of entry of the Bankruptcy Court's order on the motion.

**9.2**   <u>**Contingent Claims**</u>.  Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under the Plan.  The Holder of a Contingent Claim will be entitled to a Distribution under the Plan only when the Contingent Claim becomes an Allowed Claim.  Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor on a Claim of a Claimant is Disallowed as of the Effective Date if: (a) that Claimant's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Claimant under § 509 of the Bankruptcy Code.

**9.3**   <u>**Post-Confirmation Proofs of Claim and Amendments**</u>.  Except as otherwise expressly contemplated by the Plan, following the later of the Effective Date and the applicable Bar Date, no original or amended proof of Claim may be filed in the Chapter 11 Cases to assert a Claim against the Debtor or its Estate without prior authorization of the Bankruptcy Court, and any such proof of Claim that is filed without such authorization shall be deemed null, void and of no force or effect; <u>*provided*</u>, <u>*however*</u>, that the Holder of a Claim that has been evidenced in the Chapter 11 Cases by the filing of a proof of Claim on or before the Bar Date shall be permitted to file an amended proof of Claim in relation to such Claim at any time if the sole purpose of the amendment is to reduce the amount of the Claim asserted.

**9.4**   <u>**Settlement of Disputed Claims**</u>.  From and after the Effective Date, pursuant to Bankruptcy Rule 9019(b) and § 105(a) of the Bankruptcy Code, the Reorganized Debtor shall be entitled to compromise and settle objections to Disputed Claims as set forth below:

**9.4.1**   <u>Amount in Controversy Less than $100,000</u>.  If the amount in controversy of a Disputed Claim is less than $100,000.00, the Reorganized Debtor will be authorized and empowered to settle its objection to such Disputed Claim and execute the necessary documents, including a stipulation of settlement or release, with no further approval of or

notice to the Bankruptcy Court.

**9.4.2** <u>Amount in Controversy Greater than $100,000</u>.  If the amount in controversy of a Disputed Claim is greater than $100,000.00, the Reorganized Debtor shall be authorized and empowered to settle its objection to such Disputed Claim, and execute the necessary documents, including a stipulation of settlement or release, upon fourteen (14) days' notice filed with the Bankruptcy Court.  If no objection to the proposed settlement of the Disputed Claim is filed within that fourteen-day time period or if any objecting party withdraws its objection to such settlement for any reason, the Reorganized Debtor may enter into the proposed settlement without further notice, and without the necessity of a motion hearing or order of the Bankruptcy Court.  If a party objects to the proposed settlement and the proponent is unable to resolve the objection, the Bankruptcy Court shall set the matter for hearing applying the settlement guidelines of Bankruptcy Rule 9019 and, following the hearing, shall enter an Order resolving the dispute.

<h3 style="text-align:center">ARTICLE X.<br>CONDITIONS PRECENT</h3>

**10.1** <u>Conditions Precedent to Confirmation</u>.  Confirmation of the Plan shall occur upon the satisfaction of the following conditions:  (a) the Clerk of the Bankruptcy Court shall have entered an order or orders (i) confirming and giving effect to the terms and provisions of the Plan, (ii) determining that all applicable tests, standards, and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan, (iii) approving the Plan Documents, and (iv) authorizing the Debtor to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer of assets contemplated by the Plan and the Plan Documents.

**10.2** <u>Conditions Precedent to the Effective Date</u>.  The Effective Date shall occur upon the satisfaction of the following conditions: (a) the Bankruptcy Court has approved the Plan and entered the Confirmation Order, the Confirmation Order has become a Final Order, and it authorizes the Debtor, and Reorganized Debtor to take all actions necessary or appropriate to implement and consummate the provisions of and transactions described in or contemplated in the Plan; (b) all documents effectuating the Plan and the transactions hereunder have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents have been satisfied or waived as provided therein.

<h3 style="text-align:center">ARTICLE XI.<br>EFFECTS OF CONFIRMATION</h3>

**11.1** <u>Binding Effect</u>.  Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of this Plan shall bind every Holder of a Claim against or Interest in the Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under this Plan and whether such Holder has accepted the Plan.

**11.2** <u>Discharge of Claims and Termination of Interests</u>.  Upon the Effective Date,

and in consideration of the Distributions to be made under this Plan, except as otherwise provided in this Plan or in the Confirmation Order, each Holder of a Claim or Interest and any successor, assign, or affiliate of such Holder shall be deemed to have forever waived, released, and discharged the Debtor of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided in the Plan, upon the Effective Date, all such Holders of Claims and Interests and their successors, assigns, and affiliates shall be forever precluded and enjoined, pursuant to §§ 105, 524, and 1141 of the Bankruptcy Code, from asserting any such discharged Claim against or terminated Interest in the Debtor or Reorganized Debtor.

**11.3** **Good Faith and Protection of Certain Parties in Interest**. The respective owners, representatives, attorneys, financial advisors, and agents of the Debtor acted or have acted in good faith, and will not be liable to any Holder of a Claim or Equity Interest, or other party with respect to any action, forbearance from action, decision, strategy, position, or exercise of discretion in connection with the following (collectively, the "**Post-Petition/Plan Conduct**"): (a) the ordinary course of business operations of the Debtor after the Petition Date; (b) the proposal or implementation of any of the transactions provided for or contemplated in the Plan or any related document; or (c) the administration of the Plan or the assets and property to be distributed pursuant to the Plan other than for fraud, willful misconduct, or criminal acts. The Debtor and its owner, representatives, attorneys, financial advisors, and agents may rely on the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, and such reliance will constitute evidence of good faith regarding the Post-Petition/Plan Conduct. In an action, suit, or proceeding by a Holder of a Claim or Equity Interest or other party in interest contesting any action by or non-action of the Debtor or its respective representatives, attorneys, financial advisors, or agents, regarding the Post-Petition/Plan Conduct, the successful party is entitled to recover reasonable attorneys' fees and expenses in addition to any other available remedy. For the avoidance of doubt, no release, exculpation, or injunctions shall be granted in contravention of section 524(e) of the Bankruptcy Code or Fifth Circuit authority, including *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009). Any dispute regarding whether a claim is released, exculpated, or enjoined shall be heard and determined by the United States Bankruptcy Court for the Northern District of Texas.

**11.4** **Injunction**. Except as otherwise provided in the Plan or the Confirmation Order, from and after the Confirmation Date, all Persons, Entities, Holders of Claims, and Holders of Equity Interests against and in the Debtor are permanently restrained and enjoined from taking any of the following actions against the Assets and the Reorganized Debtor (collectively the "**Injunction Beneficiaries**") on account of any such Claims or Equity Interests: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, or Equity Interest against the Injunction Beneficiaries, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Injunction Beneficiaries; (iii) creating, perfecting, or enforcing any encumbrance, security interest, or Lien of any kind against the Injunction Beneficiaries; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against (*x*) any obligation due the Debtor, (*y*) the Assets, or (*z*) the Injunction Beneficiaries; (v) performing any act, in any manner, in any place whatsoever, that does not conform to or comply with, or is inconsistent with, the provisions of the Plan; and (vi) assert any right to damages or compensation, cause of action, liability, or right against any of the Injunction Beneficiaries; *provided, however*, that each Holder of a Disputed Claim may continue to prosecute its proof of

Claim in the Bankruptcy Court and all Holders of Claims shall be entitled to enforce their rights under the Plan, and any agreements executed or delivered pursuant to or in connection with the Plan.  If allowed by the Bankruptcy Court, any Injunction Beneficiary injured by any willful violation of such injunction shall recover actual damages, including, without limitation, costs and attorneys' and experts' fees and disbursements and, in appropriate circumstances, may recover punitive damages.  Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays imposed by the Bankruptcy Code under §§ 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect with respect to the Debtor until the Effective Date.  For the avoidance of doubt, no release, exculpation, or injunctions shall be granted in contravention of section 524(e) of the Bankruptcy Code or Fifth Circuit authority, including *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).  Any dispute regarding whether a claim is released, exculpated, or enjoined shall be heard and determined by the United States Bankruptcy Court for the Northern District of Texas.

**11.5**   **Insurance**.  Except as otherwise expressly provided in this Plan, confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor is or was the insured party, unless the Reorganized Debtor rejects or otherwise terminates any insurance policy.  Each insurance company is prohibited from – and the Confirmation Order shall include an injunction against – denying, refusing, altering, or delaying coverage on any basis regarding or related to the Chapter 11 Case or the Plan, unless said policy is rejected or otherwise terminated hereunder.

**ARTICLE XII.**
**RETENTION OF JURISDICTION**

**12.1**   **Retention of Jurisdiction**.  Notwithstanding entry of the Confirmation Order, or the entry of a final decree, with respect to the Chapter 11 Case, or any of them, the Bankruptcy Court shall retain jurisdiction from and after the Effective Date, to the fullest extent legally permitted, over the Chapter 11 Case, all proceedings arising under, arising in or related to the Chapter 11 Case, the Confirmation Order and the Plan including, without limitation, jurisdiction to:

**12.1.1**  Determine (a) any Disputed Claims, and all related Claims remaining in controversy or otherwise Disputed after the Confirmation Date including rights and liabilities under contracts giving rise to such Claims, (b) the validity, extent, priority, and avoidability and nonavoidability of consensual and nonconsensual Liens and other encumbrances, (c) pre-confirmation tax liability pursuant to § 505 of the Bankruptcy Code, and (d) controversies and disputes regarding the interpretation of the Plan and documents executed in connection therewith;

**12.1.2**  Allow, disallow, estimate, liquidate or determine any Claim or Equity Interest against or in the Debtor and to enter or enforce any Order requiring the filing of any such Claim or Equity Interest before a particular date;

**12.1.3**  Determine / Approve all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease of the Debtor pursuant to § 365 of the Bankruptcy Code and the Plan;

**12.1.4** Determine any request for payment of a potential Administrative Claim, including compensation of parties entitled thereto, or fees and reimbursements to the Debtor;

**12.1.5** Resolve controversies and disputes regarding the interpretation and implementation of the Plan, any disputes relating to whether or not a timely and proper proof of Claim was filed or whether a Disallowed Claim should be reinstated;

**12.1.6** Implement the provisions of the Plan and enter Orders and injunctions in aid of confirmation and consummation of the Plan, including any disputes concerning the enforceability or applicability of the releases and injunctions contained herein;

**12.1.7** Issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan (including all exculpations and injunctions), any Plan Document, or any transaction contemplated under any of the foregoing, the Confirmation Order, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

**12.1.8** Determine issues relating to the garnishment of any Distributions payable under the terms of the Plan;

**12.1.9** Modify the Plan pursuant to § 1127 of the Bankruptcy Code;

**12.1.10** Preside over and adjudicate any and all Causes of Action that arose prior to the Confirmation Date or in connection with the implementation of the Plan, whether or not pending on the Confirmation Date;

**12.1.11** Resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

**12.1.12** Resolve any disputes concerning whether a person or entity had sufficient notice of the Chapter 11 Cases, any applicable Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Equity Interest is barred hereunder or for any other purpose;

**12.1.13** Preside over and determine any and all applications, claims, pending adversary proceedings, and contested matters (including, without limitation, any adversary proceeding or other proceeding to recharacterize agreements or reclassify Claims or Equity Interests) in the Chapter 11 Case;

**12.1.14** Enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

**12.1.15** Seek the issuance of such orders in aid of execution of the Plan, to the extent authorized by § 1142 of the Bankruptcy Code;

**12.1.16** Consider any modifications of the Plan, to cure any defect or omission, or

reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

**12.1.17** Recover all assets of the Debtor and property of the Estate, wherever located;

**12.1.18** Resolve matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code;

**12.1.19** Hear any other matter not inconsistent with the Bankruptcy Code;

**12.1.20** Resolve any and all disputes or controversies relating to Distributions to be made, and/or reserves or escrows to be established, under the Plan;

**12.1.21** Enforce any injunctions granted under the Plan;

**12.1.22** Approve settlements relating to any of the above;

**12.1.23** Determine any and all motions, applications, adversary proceedings, contested or litigated matters, including Causes of Action initiated by, against, or otherwise involving the Debtor.

**12.1.24** Hear and determine all matters necessary to enforce the rights, remedies, and obligations reserved for the Debtor, the Plan Documents, or the Confirmation Order, including interpreting any provision of any of the foregoing; and

**12.1.25** Enter a final decree and order concluding, closing, or terminating the Chapter 11 Case.

**12.2** <u>**Limitation on Jurisdiction and Authority**</u>.  In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334 or authority to enter final judgments beyond that provided by applicable law, including the Constitution of the United States.

**12.3** <u>**No New Requirements**</u>.  The grant of jurisdiction to the Bankruptcy Court herein over a matter or issue does not mean that Bankruptcy Court approval is required for such matters or issues, nor does it otherwise affect the substantive legal requirements or the requirements in any agreement pertaining to such matters or issues.

**ARTICLE XIII.**
**MISCELLANEOUS PROVISIONS**

**13.1** <u>**Authorization**</u>.  The Debtor, and the Reorganized Debtor after the Effective Date, shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

**13.2** <u>**Amendment of the Plan**</u>.  The Proponent reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date.  After the Effective

Date, the Reorganized Debtor may, on order of the Bankruptcy Court, amend or modify the Plan in accordance with § 1193 of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

      **13.3**   <u>**Non-Confirmation of the Plan**</u>.  The Proponents reserve the right to withdraw this Plan at any time prior to the Confirmation Date.  If the Proponent withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained in this Plan shall be deemed to constitute an admission of any liability or of the viability of any defense to liability on the part of the Debtor, the Estate, or any other Person.

      **13.4**   <u>**Filing of Additional Documentation**</u>.  On or before the Effective Date, the Proponent may file with the Bankruptcy Court such agreements and other documents as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

      **13.5**   <u>**Governing Law**</u>.  Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof.

      **13.6**   <u>**Headings**</u>.  Each heading preceding an article, section or paragraph of the Plan is inserted for convenience only and shall not affect interpretation or construction of the Plan.

      **13.7**   <u>**Severability**</u>.  Should any term or provision of the Plan be determined by the Bankruptcy Court to be invalid, void or unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan.  If any term or provision of the Plan is of such a character as to deny Confirmation, the Proponents reserve the right to strike such provisions from the Plan and seek Confirmation of the Plan as modified. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

      **13.8**   <u>**All Claims and Equity Interests**</u>.  The Plan is intended to deal with all Claims of whatever character whether or not Disputed, contingent, or liquidated and whether or not Allowed by the Bankruptcy Court under § 502 of the Bankruptcy Code against and Equity Interests in the Debtor.  However, only those Claims and Equity Interests Allowed shall be entitled to receive the treatment afforded by the Plan.

      **13.9**   <u>**Computation of Time**</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 shall apply unless otherwise set forth in the Plan or determined by the Bankruptcy Court.

      **13.10**  <u>**Section 1125(e) Good-Faith Compliance**</u>.  The Proponents and their respective

representatives and professionals shall be deemed to have acted in "good faith" under § 1125(e) of the Bankruptcy Code.

**13.11    Notices**.  Any notice required to be given under this Plan shall be in writing and, except for a notice of change of address, shall be considered complete on the earlier of: (a) three (3) days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by the Entities on the Post-Confirmation Service List by facsimile or computer transmission; or (c) three (3) days following the date the notice is sent to those Entities on the Post-Confirmation Service List as such Service List is adopted by the Bankruptcy Court at the hearing on confirmation of the Plan, as such list may be amended from time-to-time by written notice from the Persons on the Post-Confirmation Service List.  Unless and until otherwise directed, any pleading, notice or other document required or permitted by the Plan to be served on or delivered to the Debtor, or, if after the Effective Date, the Reorganized Debtor and the U.S. Trustee, as the case may be, shall be sent by U.S. first class mail, postage prepaid, to:

|                                    |                                   |
|------------------------------------|-----------------------------------|
| Debtor:                            | With copies to:                   |
| JM4 Tactical, LLC                  | Brandon J. Tittle                 |
|                                    | Tittle Law Group, PLLC            |
|                                    | 5465 Legacy Dr., Ste. 650         |
|                                    | Plano, Texas 75024                |
|                                    |                                   |
| Subchapter V Trustee:              | Brad W. Odell - SBRA V            |
|                                    | Mullin Hoard & Brown, L.L.P.      |
|                                    | P.O. Box 2585                     |
|                                    | Lubbock, Texas 79408              |
|                                    |                                   |
| United States Trustee:             | Erin Schmidt                      |
|                                    | Attorney                          |
|                                    | Office of the U.S. Trustee        |
|                                    | 1100 Commerce Street              |
|                                    | Room 976                          |
|                                    | Dallas Texas 75242                |

**13.12    Confirmation Order.**  The Confirmation Order shall provide that unless expressly provided therein or by incorporation of this Plan, the Confirmation Order does not modify, alter or supersede any order of the Bankruptcy Court entered in the Bankruptcy Case.

Dated: July 18, 2024.                    Respectfully submitted by:


By:*/s/ Brandon J. Tittle*
Brandon J. Tittle
Texas Bar No. 24090436
**TITTLE LAW GROUP, PLLC**
5465 Legacy Dr., Ste. 650
Plano, Texas 75024
Telephone: 972.731.2590
Email: btittle@tittlelawgroup.com

**COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

**<u>EXHIBIT A</u>**

**Liquidation Analysis**

## <u>EXHIBIT B</u>

**12-Month Projections**

## SCHEDULE OF ASSUMED EXECUTORY CONTRACTS

| Contract Party | Contract | Cure Amount |
|---|---|---|
| RGP Enterprises Inc. | Lease | $0.00 |
| Saddlemate | Patent Licensing Agreement | $0.00 |